**AVYNO LAW P.C.**
Edward F. O'Connor, Esq. (SBN 123398)
Email: efo@avynolaw.com
Jennifer H. Hamilton, Esq. (SBN 220439 )
Email: jhh@avynolaw.com
Jan A. Sundberg, Esq. (SBN 169186)
Email: jas@avynolaw.com
Shawn B. Hussain, Esq. (SBN 315872)
Email: sbh@avynolaw.com
6345 Balboa Blvd., Suite 208, Building I
Encino, CA 91316
Tel.: (818) 654-8841
Fax: (818) 332-4205

Attorneys for Plaintiff
R and A Synergy, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| R AND A SYNERGY LLC, a California limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> SPANX, INC., a Georgia corporation, <br><br> Defendant. | **CASE NO.:**  2:17-cv-9147 <br><br> **COMPLAINT FOR:** <br><br> **(1) COPYRIGHT INFRINGEMENT [17 U.S. Code § 502];** <br> **(2) TRADE DRESS INFRINGEMENT [15 U.S.C. § 1125];** <br> **(3) UNFAIR CMPETITION AND FALSE ADVERTISING [15 U.S.C. §1125(a)];** <br> **(4) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN [15 U.S.C. §1125(a)];** <br> **(5)  UNFAIR COMPETITION AND FALSE ADVERTISING [CAL. BUS. & PROF. CODE §§ 17200 and 17500 *ET SEQ*.]; AND** <br> **(6) UNFAIR OR DECEPTIVE ACTS OR PRACTICES [CLRA CAL. CIV. CODE §§ 1750, 1770 AND 1780 *ET SEQ*.).** <br><br> **[DEMAND FOR TRIAL BY JURY]** |

Plaintiff R and A Synergy, LLC, by and through its counsel, Avyno Law P.C., for its complaint against Defendant Spanx, Inc., alleges as follows:

## PARTIES

1.      Plaintiff R and A Synergy, LLC ("Plaintiff R and A") is a California limited liability corporation with its principal place of business in Los Angeles County, CA.  Plaintiff R and A is engaged in the development and sales of slip-on sleeves made to wear under sleeveless and strapless dresses and has made, sold and/or licensed such products for sale since December 2011.

2.      Defendant Spanx, Inc. ("Defendant Spanx") is a Georgia corporation, with its principal place of business at 3035 Peachtree Road, Suite 200, Atlanta, Georgia 30305.  Defendant Spanx manufactures and sells undergarments and clothing, targeted primarily to women, in the categories of leggings, tops, active wear, shapewear, bras, panties and hosiery.

3.      Defendant Spanx is a corporation domiciled in Georgia, organized under the laws of that state, and maintains its principal business office in Georgia. Defendant Spanx maintains two retail stores in the Los Angeles area.  One retail store is located at 395 Santa Monica Place #102, Santa Monica, CA 90401.   The other retail store is located in the Los Angeles International Airport, Terminal 2, 200 World Way, Los Angeles, CA 90045.   Plaintiff R and A further alleges that Defendant Spanx has committed the various acts (alleged below) which were expressly aimed at Plaintiff R and A, a California domiciliary, and that jurisdiction over Defendant Spanx is further established by: (1) their purposeful activities or transactions with California, or residents thereof, by which they purposefully avail themselves of the privilege of conducting activities in this forum; (2) the fact that the claims alleged herein arise out of or relate to their forum-related activities; and (3) the fact that the exercise of jurisdiction is reasonable, or comports with fair play and substantial justice.

## JURISDICTION AND VENUE

4.     This is an action arising under the Lanham Act, 15 U.S.C. Section 1125(a).  This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. Section 1121 (action arising under the Lanham Act); 28 U.S.C. Section 1331 (federal question); 28 U.S.C. Section 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. Section 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws).

5.     This Court has jurisdiction over the state law claims in this action pursuant to 28 U.S.C. Section 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.     Based on information and belief this Court has specific personal jurisdiction over Defendant Spanx because it has purposefully committed, and continues to commit acts within the State of California, the acts from which these claims arise.  The Court also has general personal jurisdiction over Defendant Spanx as it conducts continuous, systematic, and routine business within the State of California and the County of Los Angeles.

7.     Venue is proper in the United States District Court for the Central District of California pursuant to U.S.C. Sections 1391(b) and 1391(c) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

8.     Plaintiff R and A is engaged in the development and sales of slip-on sleeves made to wear under sleeveless and strapless dresses ("under sleeves") and has made, sold and/or licensed such under sleeves for sale, continuously and without interruption since December 2011.

9.     In 2008, Ruthann Greenblat, CEO and shareholder of Plaintiff R and A, conceived of the unique idea to create a sleeved garment specifically designed

as a layering piece to wear under sleeveless and strapless tops and dresses ("outergarment").

10.     From 2008-2011, Plaintiff R and A focused its efforts on research, design and development of its under sleeves product line, spending a great amount of time and resources building its business, protecting and developing its intellectual property and designing its product line.

11.     On February 20, 2009, Plaintiff R and A filed a trademark application for the mark SLEEVEY WONDERS, which federally registered as US 3,890,712.

12.     Commencing in 2009, Plaintiff R and A also began filing a series of utility and design patents covering certain under sleeve styles, many of which have since issued and several of which are still pending.

13.     Figures 31-35 of US Patent No. 8,365,313, filed on February 3, 2010, with a priority date of February 3, 2009, show renderings of Plaintiff R and A's conception of slip-on sleeves made to wear under sleeveless and strapless tops and dresses that give the appearance of being part of the outer garment with which they are worn.  *Exhibit A* is a true and correct copy of US Patent No. 8,365,313.

14.     On December 15, 2011, Plaintiff R and A launched its first website offering under sleeves for sale under the brand name SLEEVEY WONDERS ("Sleevey Website").  The SLEEVEY WONDERS under sleeves were advertised on the Sleevey Website (www.sleeveywonders.com), as shown on *Exhibit B*, which website has been marked with copyright notices since its original launch.

15.     Prior to the launch of the SLEEVEY WONDERS under sleeves, no category of garment existed for slip-on sleeves made to wear under sleeveless and strapless tops and dresses that give the appearance of being part of the outergarment with which they are worn.

16.     The same subject matter that appeared on the Sleevey Website also appeared on the hangtags sold with all SLEEVEY WONDERS products ("Sleevey Hangtag").  A true and correct copy of the Sleevey Hangtag is set forth on *Exhibit C*.

17.     The Sleevey Hangtag is the subject of Federal Copyright Registration No. VA-2-075-388.  A true and correct copy of Federal Copyright Registration No. VA-2-075-388 is attached as **Exhibit D**.

18.     Both the Sleevey Website and the Sleevey Hangtag illustrate a woman wearing the SLEEVEY WONDERS' under sleeves, a magician's hat and a waving of a magic wand.

19.     Both the Sleevey Website and the Sleevey Hangtag advertise the under sleeves as:

Reversible slip on sleeves made to wear UNDER all your sleeveless & strapless tops & dresses, magically transforming your outfit into something NEW!

20.     Both the Sleevey Website and the Sleevey Hangtag use a mathematical equation to show that the combination of the under sleeves added with a sleeveless over garment equals a new outfit.  The equation uses a plus symbol and an equal sign.

21.     The Sleevey Hangtag further includes an illustration of paper dolls wearing an under sleeve and separate outer garments that can be affixed to and interchanged with the paper dolls to show the various outfits and styles that can be worn.

22.     The Sleevey Hangtag further provides a bullet point list of "What Sleevey Wonders Can Do For You" beyond covering "bare, flabby arms."

23.     Since December 15, 2011, Plaintiff R&A's SLEEVEY WONDERS brand has used the tagline, "Beautify your arms & expand your wardrobe ..." on the Sleevey Website and on the Sleevey Hangtag.

24.     For at least the last four years, Plaintiff R and A has marketed its product using the tag-line, "Made in the USA, with love."  True and correct copies of the use of the tag-line can be found at **Exhibit E**.

25.     Commencing in December 2011, Plaintiff R and A marketed its SLEEVEY WONDERS' under sleeves on both the Sleevey Website and Sleevey

Hangtag as a product: (i) "to wear UNDER all your sleeveless & strapless tops & dresses;" and (ii) "magically transforming your outfit into something NEW!;" and (iii) to "expand your wardrobe."

26.    In addition to manufacturing and selling SLEEVEY WONDERS' under sleeves, Plaintiff R and A also entered into a license agreement in November 2012 with Magic Tap LLC ("Magic Tap"), which licensed Plaintiff R and A's under sleeves on a non-exclusive basis for sale under the brand SLEEVEY MAGIC.

27.    On December 19, 2012, Plaintiff R and A filed a trademark application for the mark SLEEVEY MAGIC, which federally registered on April 8, 2014 as US 4,511,938, in connection with women's tops and foundation garments.

28.    Magic Tap, under license from Plaintiff R and A, sold thousands of under sleeves under the trademark SLEEVEY MAGIC until its license terminated in 2015.  Magic Tap advertised and sold the SLEEVEY MAGIC under sleeves through a direct TV site, through YouTube channels, on its website and through retail stores, including but not limited to, Walgreens.

29.    The under sleeves sold under the trademark SLEEVEY MAGIC and SLEEVEY WONDERS were identical.  Both products are made of a nylon and spandex blend.

30.    The SLEEVEY WONDERS under sleeves are light weight, sheer, form fitted sleeved garments that fit snuggly around the arms of the wearer and that, when worn under a sleeveless outer garment, give the appearance of the sleeveless over garment having sleeves, thereby creating a new look and allowing women to wear sleeveless outer garments year round.

31.    Ruthann Greenblat, Plaintiff R and A's CEO, designed the under sleeves using fabrics of different ornamental appearance to create different looks.

The SLEEVEY WONDERS under sleeves were designed and are sold in mesh, lace, dotted mesh, jersey and fishnet.

32.     Ruthann Greenblat also designed and Plaintiff R and A sells several different styles of under sleeves, including basic, bell, bandeau, flutter, waterfall, halter, shirred, tunic and trellis.

33.     The SLEEVEY WONDERS under sleeves of various ornamental styles is also designed and sold in a variety of colors including black, white, grey, coral, pink, mint, cobalt blue, periwinkle blue, apple green, olive green, forest green, navy, red, silver, turquoise, eggplant, brown and off-white.  ***Exhibit F*** is a true and correct copy of the various styles of under sleeves product sold under the brand name SLEEVEY WONDERS.

34.     Plaintiff R and A markets and sells it's under sleeves showing the under sleeves on a mannequin next to a person wearing the under sleeves under a sleeveless or strapless dress or top.

35.     Plaintiff R and A also markets and sells its SLEEVEY WONDERS under sleeves products by photographing a person wearing a sleeveless dress or top without the undersleeves next to a photograph of a person wearing SLEEVEY WONDERS under sleeves under various styles of sleeveless dresses or tops.

36.     Plaintiff R and A maintains a webpage, an Instagram account and a Facebook page.  Plaintiff R and A has maintained a website continuously and without interruption since December 15, 2011, maintained its Instagram account continuously and without interruption since 2013 and maintained its Facebook Page continuously and without interruption since 2012.

37.     Plaintiff R and A further engages the services of independent marketing and sales consultants in the US and foreign jurisdictions that have been responsible for marketing, selling and placing the SLEEVEY WONDERS under sleeves products in retail stores and boutiques across the United States.  Such

independent marketing and sales consultants have further been responsible for the placement of SLEEVEY WONDERS under sleeves in various catalogs.

38.     Since December 2011, Plaintiff R and A participated in numerous tradeshows, including but not limited to the following nationally and internationally recognized trade shows:  WWIN Las Vegas, Atlanta Gift and Atlanta Fashion, Dallas World Trade Center, MODA NY, NEAC, Metro, and TRENDS.

39.     In addition to its sales on the Sleevey Website, SLEEVEY WONDERS under sleeves products are sold in at least 1500 retail stores across the United States and Canada, as well as stores in Australia, New Zealand and the UK.

40.     Since its inception, Plaintiff R and A has generated over 5.8 million dollars in revenue from the sales of under sleeves product through its website, to its retailers and distributors and through its licensees.

41.     The SLEEVEY WONDERS under sleeves have been worn by the following celebrities and/or received national recognition in the following ways: (i) SLEEVEY WONDERS basic mesh under sleeves are worn by Lily Tomlin on Grace & Frankie, a Netflix original; (ii) SLEEVEY WONDERS under sleeves worn by Jane Fonda; (iii) featured in A Cup of Frosting blog; (iv) featured in LA Times Travel, (v) featured in O, The Oprah Magazine; (vi) featured in Curvy Magazine; (vii) featured in First Magazine; and (viii) featured in Huffington Post as #2 Must Have Travel Accessory in an article featuring 30 Must have Travel Accessories for 2015.

42.     On May 15, 2013, Jillian Doyle, Assistant to Sara Blakely, CEO of Defendant Spanx, ordered two SLEEVEY WONDERS under sleeves from Plaintiff R and A for Lisa Magazine, Executive Assistant to Sara Blakely.  The two under sleeves were shipped directly to Defendant Spanx's headquarters in Georgia. Plaintiff R and A sent one basic ¾ length black lace product and basic ¾ length ivory mesh product to Defendant Spanx's headquarters in fulfillment of the order.

*Exhibit G* attached hereto is a true and correct copy of the receipt sent to Defendant Spanx in 2013 with the order.

43.     The SLEEVEY WONDERS under sleeves shipped to Defendant Spanx's headquarters in May 2013, included the Sleevey Hangtag.

44.     In April and May 2016, Plaintiff R and A's legal counsel left messages for Spanx General Counsel, Leslie Slavich, inquiring about whether Defendant Spanx had any interest in discussing a potential business arrangement with the owners of the Sleevey Wonder's under sleeves.  Ms. Slavich never returned any of the messages.

45.     Thereafter, on or around September 12, 2017, Defendant Spanx came out with a product sold under the brand SHEER FASHION.  The SHEER FASHION products are sold as layering pieces to be worn under sleeveless garments.  The line includes crop tops that are indistinguishable in appearance to the SLEEVEY WONDERS under sleeves when worn under a sleeveless outer garment.

46.     Like the SLEEVEY WONDERS' under sleeves, Spanx SHEER FASHION products are long sleeve crop tops sold in sheer mesh, polka dot and lace, and are nearly identical in appearance to the SLEEVEY WONDERS under sleeves when worn under a sleeveless dress or top.  *Exhibit H* attached hereto is a true and correct depiction of SHEER FASHION products and SLEEVEY WONDERS under sleeves products shown side-by-side.

47.     By selling SHEER FASHION products nearly identical in appearance to the SLEEVEY WONDERS under sleeves products, Defendant Spanx has acted in willful disregard of the laws protecting Plaintiff R and A's goodwill, and they have intentionally confused and deceived, or threatened to confuse and deceive, the consuming public concerning the source, affiliation, connection, or sponsorship of Defendant Spanx's Sheer Fashion products. By its wrongful conduct, Defendant Spanx has traded upon and diminished Plaintiff R and A's reputation and goodwill

in a manner likely to cause confusion over the source, affiliation, connection, or sponsorship of Plaintiff R and A's and Defendant Spanx's goods.

48.     Thereafter, on Monday, September 25 of 2017, Defendant Spanx launched a product sold under the brand name ARM TIGHTS, using the slogan "Transform Your Wardrobe!" and claiming ARM TIGHTS to be "Spanx's Next Billion-Dollar Idea."  Attached as ***Exhibit I*** is a true and correct copy Defendant Spanx's website advertising ARM TIGHTS and a true and correct copy of an article published on September 25, 2017 by Inc.

49.     Similar to SLEEVEY WONDERS under sleeves, the ARM TIGHTS products are sold as a layering piece to be worn under sleeveless garments.

50.     Similar to the basic style SLEEVEY WONDERS under sleeves, Spanx ARM TIGHTS are long sleeved crop tops that are indistinguishable in appearance from the basic style SLEEVEY WONDERS under sleeves when worn under a sleeveless dress or top. ***Exhibit J*** attached hereto is a true and correct depiction of ARM TIGHTS products and SLEEVEY WONDERS under sleeves products shown side-by-side.

51.     Except for the yellow ARM TIGHTS, ARM TIGHTS are available in all the same colors as the SLEEVEY WONDERS under sleeves products and provides a fitted look on the arms of the wearer, identical to that of the SLEEVEY WONDERS under sleeves products.

52.     ARM TIGHTS are sold in a hosiery type packing ("Arm Tights Packaging") with several advertising inserts in the packaging ("Arm Tights Packaging Inserts").  ***Exhibit K*** is a true and correct copy of the Arm Tights Packaging and ***Exhibit L*** is a true and correct copy of the Arm Tights Packaging Inserts.

53.     ARM TIGHTS are sold and advertised for sale on Defendant Spanx's website (www.spanx.com).  ***Exhibit M*** is a true and correct copy of the relevant pages of Defendant Spanx's website.

54.      Similar to the slogan of Plaintiff R and A, "magically transforming your outfit into something NEW!", Defendant Spanx advertises ARM TIGHTS on its website and its product packaging using the slogan "Transform your wardrobe!" and advertises its product as being magic. ***Exhibit N*** is true and correct copies of Defendant Spanx advertisements using the slogan "Transform your wardrobe!" and advertising the product as magic.

55.      Similar to the SLEEVEY WONDERS Sleevey Hangtag including paper dolls, the ARM TIGHTS Packaging Inserts also includes paper dolls wearing a sleeved under garment with various interchangeable outfits that fit over the paper dolls. ***Exhibit O*** is a side-by-side comparison of true and correct copies of the paper doll advertising used by both Plaintiff R and A and Defendant Spanx.

56.      Similar to the Sleevey Hangtag providing a bullet point list of "What Sleevey Wonders Can Do For You," the ARM TIGHTS Packaging further includes a list of "What's it do?" which includes a bullet point list of product benefits. ***Exhibit P*** is a side-by-side comparison of true and correct copies of the bullet point list of both Plaintiff R and A and Defendant Spanx.

57.      Similar to the Sleevey Website and Sleevey Hangtag using an equation to show that the product combines items to create new items, the Arm Tights Packaging uses a similar equation to show that ARM TIGHTS together with sleeveless tops and dresses expands a person's wardrobe. ***Exhibit Q*** is a side-by-side comparison of true and correct copies of the equations used by both Plaintiff R and A and Defendant Spanx.

58.      Similar to Plaintiff R and A's use of the slogan "Made in the USA, with love" to advertise its product, Defendant Spanx also uses the phrase "#Madewithlove" to advertise its products for sale. ***Exhibit R*** is a side-by-side comparison of true and correct copies of both Plaintiff R and A and Defendant Spanx using the respective slogans.

59.     By selling ARM TIGHTS products nearly identical in appearance to the SLEEVEY WONDERS Sleevey under sleeves products and blatantly lifting slogans and product packaging materials from Plaintiff R and A, Defendant Spanx has acted in willful disregard of the laws protecting Plaintiff R and A's goodwill, and they have intentionally confused and deceived, or threatened to confuse and deceive, the consuming public concerning the source, affiliation, connection, or sponsorship of Defendant Spanx's ARM TIGHTS products. By its wrongful conduct, Defendant Spanx has traded upon and diminished Plaintiff R and A's reputation and goodwill in a manner likely to cause confusion over the source, affiliation, connection, or sponsorship of Plaintiff R and A's and Spanx's goods.

60.     Further, after receiving Sleevey Wonders under sleeves products, packaging and hangtags, Defendant Spanx willfully and intentionally copied, reproduced, printed, displayed, offered for sale, and sold products that featured unlicensed copies of Plaintiff R and A's copyrighted work.

61.     Defendant Spanx further claims ARM TIGHTS to be a revolutionary new invention that reinvents the way that women get dressed and that is able to transform one's wardrobe "unlike any other layering options" on the market to wear everything in one's closet, year round.  See *Exhibit S*, which is a true and correct copy of an Instagram advertisement for ARM TIGHTS.

62.     CEO Sara Blakely through Defendant Spanx's advertising and her own statements to media has misled the public into believing that she was the first to market with a revolutionary concept that solves a problem that has never been solved before.  When, in fact, Defendant Spanx and Blakely had knowledge that Plaintiff R and A already had a light weight, form fitting, crop top, product on that market that was a layering piece, made of a smoothing design that flattened the arms and was designed specifically for wearing under sleeveless garments, providing extra coverage for sleeveless looks year round.  See *Exhibit T*, which is a true and correct copy of an Instagram advertisement for ARM TIGHTS.

63.     CEO Sara Blakely on Good Morning America, which aired on October 27, 2017, claimed that she invented a product that filled a "white space." In particular, she claimed to have so many sleeveless dresses and shirts that hang in her closet that she could not wear in the fall or winter, but now she can with her invention:

> Yes, because I have my own invention, just like all of these entrepreneurs and Spanx has launching Arm Tights, so, so listen, I'm wearing them right now so they're amazing.  They allow women to wear everything sleeveless in their closet year-round.  And, so I always say, when I look for entrepreneurs, I look for people who fill the white space, someone who solves a problem, comes up with a better solution and then can explain to me why they are the best option. And, my frustration with this was that I had so many sleeveless dresses and shirts that hang in my closet that I can't wear in the fall or winter so this is a sleeveless dress and I threw on this shimmer silver.

*Exhibit U* is a true and correct copy of the transcript provided by ABC of this segment.

64.     A feature article in the New York Post about Defendant Spanx's new product, ARM TIGHTS, noted that "Spanx founder Sara Blakely insists that the invention wasn't born out of a desire to slenderize arms but to squeeze more looks out of warm-weather clothing as temps drop."  The article quoted Blakely as stating, "My favorite things to invent are the ones women didn't realize they needed and can't live without…. Tights have been around for our legs for so many years, I was thinking, 'Why aren't there tights for our arms?'" *Exhibit V* is a true and correct copy of a mobile preview of the New York Post article.

65.     Due to the identical look of SLEEVEY WONDERS under sleeves and ARM TIGHTS garments, Blakely, through her false statements identifying her as the creator of a new product category, is further intentionally confusing and deceiving the consuming public as to the source, affiliation, connection, or sponsorship of Spanx's ARM TIGHTS products.

66.     In fact, the SLEEVEY WONDERS under sleeves product worn by Lily Tomlin on Grace and Frankie, a Netflix Original, has already been confused by consumers as ARM TIGHTS products in comments posted on Defendant Spanx's Instagram account.

67.     Blakely is further misleading the public to believe that her mission is supporting women, namely, supporting women who live an entrepreneurial life, when in fact she is knowingly and intentionally capitalizing on Plaintiff R and A's and its CEO Ruthann Greenblat's ideas, another female business owner and entrepreneur.

68.     For example, under the About Us page of Defendant Spanx website (spanx.com/about-us), it states the following:

> "In March of 2012, Founder Sara was named the world's youngest, self-made female billionaire by Forbes Magazine and one of TIME's 100 Most Influential People. Headquartered in Atlanta, GA and opening retail shops across the United States, SPANX can now be found worldwide in more than 50 countries. In addition to keeping butts covered from Savannah to Singapore, SPANX also shapes the world by focusing on our mission: To help women feel great about themselves and their potential."

**Exhibit W** is a true and correct copy of the spanx.com About Us page (spanx.com/about-us).

69.     Even more misleading are the statements found under the Elevating Women page of Defendant Spanx's website (spanx.com/elevatingwomen), which states:

> "I am committed to the belief that we would all be in a much better place if half the human race (WOMEN) were empowered to prosper, invent, be educated, start their own businesses, run for office — essentially be given the chance to SOAR!
>     — Sara Blakely
> We're about supporting women living an entrepreneurial life. Not just traditional entrepreneurs, but women from all walks and talks doing what they do best… artists, filmmakers, teachers, accountants, stay-at-home

moms… anyone with the courage, creativity and confidence to pursue their dreams."

***Exhibit X*** is a true and correct copy of the spanx.com Elevating Women page (spanx.com/elevatingwomen).

70.    Upon information and belief, women buy Defendant Spanx's products and support Defendant Spanx's business, at least in part, upon Blakely and Defendant Spanx's claims of supporting women and women entrepreneurs.

71.    Defendant Spanx and Plaintiff R and A are direct competitors of one another, selling nearly identical products, sold for the same purpose and use, to the same target market (females), at similar price points ($30.00-$57.00), and through the same channels of trade (on-line, catalog sales and direct marketing to target consumers, retail stores and boutique).

72.    In fact, Plaintiff R and A has already been notified by at least one boutique that Plaintiff R and A lost sales to the boutique because the boutique carried Defendant Spanx's products and has lost customers recently that are also known to carry Defendant Spanx's products.

73.    On November 7, 2017, Ruthann Greenblat, CEO of Plaintiff R and A, sent a letter to Sara Blakely, CEO of Defendant Spanx, calling to her attention the fact that Defendant Spanx purchased SLEEVEY WONDERS under sleeves in 2013 and that Defendant Spanx and Blakely were now falsely claiming Plaintiff R and A's idea was their own.  Greenblat further expressed her shock in Defendant Spanx and Blakely's claims given that Blakely had built the SPANX brand and her foundation on the importance of helping and mentoring other women.  ***Exhibit Y*** is a true and correct copy of the November 7, 2017 letter to Defendant Spanx.

74.    On November 14, 2017, Defendant Spanx's attorneys, King and Spalding, responded, in part, by: (i) distinguishing the products claiming that Defendant Spanx's packaging and promotional materials are readily distinguishable from and not likely to be confused with those of Plaintiff R and A;

and (ii) claiming that Defendant Spanx's current offerings are all in a pull-on style, whereas Sleevey Wonders under sleeves products snap under the bust. ***Exhibit Z*** is a true and correct copy of the November 14, 2017 letter to Ruthann Greenblat, CEO of Plaintiff R and A.

75. Contrary to claims by Defendant Spanx's attorney's in the November 14, 2017 letter, for the reasons set forth above, Defendant Spanx's packing and promotional materials infringe upon Plaintiff R and A's copyright in the Sleevey Website and Sleevey Hangtags. Defendant Spanx's website and packaging and promotional materials also use confusingly similar slogans to those used continuously by Plaintiff R and A for years. Defendant Spanx's ARM TIGHTS and SHEER FASHION products are nearly identical to one another and are indistinguishable from the basic style SLEEVEY WONDERS under sleeves when worn under sleeveless tops. Further, the original basic style SLEEVEY WONDERS under sleeves are pull-on style, similar to Defendant Spanx's current offerings. ***Exhibit A1*** is a true and correct copy of a post on Defendant Spanx' Facebook page with a follower commenting on ARM TIGHTS -- "they look a lot like Sleevey Wonders."

76. Over the past five (5) years, Plaintiff R and A has been aggressively enforcing its rights against knock-offs in the market place to protect its new under sleeves product category of a form fitting, arm smoothing, crop top, layering piece, which Plaintiff R and A –not Defendant Spanx – first brought to the marketplace.

### FIRST CAUSE OF ACTION
### (Copyright Infringement - 17 U.S. Code § 502)

77. Plaintiff R and A repeats and re-alleges each allegation set forth above as if set forth fully herein.

78. Plaintiff R and A is the author and registered copyright owner of the Sleevey Hangtag (the "R and A copyrighted work").

79.     Defendant Spanx had access to Plaintiff R and A's Sleevey Hangtag.

80.     Defendant Spanx copied, reproduced, printed, displayed, offered for sale, and sold products that featured R and A's copyrighted work, without limitation, Plaintiff R an A's paper doll illustrations, use of equations to show wardrobe expansion, bullet point list explaining what the product can do, product features, marketing buzz words, catch phrases, slogans, image reproductions and product depiction and product layout and presentation.

81.     Defendant Spanx's acts of infringement were willful and/or reckless.

82.     By copying, distributing, displaying, publishing, and otherwise exploiting R and A copyrighted work, Defendant Spanx infringed Plaintiff R and A's copyrights in the Sleevey Hangtag and R and A copyrighted work under 17 USC § 502 *et seq.* and caused Plaintiff R and A significant injuries, damages, and losses in amounts to be determined at trial.

83.     Plaintiff R and A seeks all damages recoverable under the Copyright Act (17 USC Chapter 5), including statutory or actual damages, including Defendant Spanx's profit attributable to the infringements, and damages suffered as a result of the lack of compensation, credit, and attribution from any diminution in the value of R and A copyrighted work.

## SECOND CAUSE OF ACTION
### (Trade Dress Infringement – Lanham Act 15 U.S.C. § 1125)

84.     Plaintiff R and A repeats and re-alleges each allegation set forth above as if set forth fully herein.

85.     Plaintiff R and A has manufactured, advertised, distributed, marketed, promoted and offered it SLEEVEY WONDERS under sleeves since December 15, 2011.

86.     Plaintiff R and A's SLEEVEY WONDERS under sleeves having been sold continuously and without interruption over five years, across the United States

and internationally have acquired secondary meaning such that consumers recognize SLEEVEY WONDERS under sleeves as coming from a unique source which is Plaintiff R and A.

87. Both Defendant Spanx's ARM TIGHTS and SHEER FASHION products use the look and feel and fabric designs of Plaintiff R and A's SLEEVEY WONDERS under sleeves such that they are likely to cause confusion as to the source of SLEEVEY WONDERS under sleeves products with SPANX products or vice versa (creating reverse confusion).

88. Defendant Spanx knew of the commercial success of Plaintiff R and A's SLEEVEY WONDERS under sleeves and Defendant Spanx willfully used the look and feel of Plaintiff R and A's under sleeves' trade dress in connection with the sale, offering for sale, distribution and/or advertising of ARM TIGHTS and SHEER FASHION products in a manner likely to cause confusion, or to cause mistake, or to deceive customers that Defendant Spanx's ARM TIGHTS and SHEER FASHION products are products from Plaintiff R and A or otherwise associated with or authorized by Plaintiff R and A, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, thereby creating reverse confusion.

89. Defendant Spanx's conduct described above constitutes trade dress infringement in violation of 15 U.S.C. § 1125.

90. The actions of Defendant Spanx, if not enjoined, will continue.

91. Plaintiff R and A have suffered and continue to suffer damages in an amount to be proven at trial.

92. Plaintiff R and A is further entitled to injunctive relief to prevent Defendant Spanx's infringement.

93. Pursuant to 15 U.S.C. §§ 1117 and 1125, Plaintiff R and A is entitled to recover damages, profits made by Defendant Spanx and the costs of this action.

### THIRD CAUSE OF ACTION

### (Federal Unfair Competition and False Advertising under 15 U.S.C. §1125(a) against all Defendants)

94.    Plaintiff R and A repeats and re-alleges each allegation set forth above as if set forth fully herein.

95.    Plaintiff R and A and Defendant Spanx are direct competitors of one another.

96.    Defendant Spanx's actions described above and specifically, without limitation, Defendant Spanx: (i) claims of reinventing the way that women get dressed and transforming one's wardrobe "unlike any other layering options" on the market to wear everything in one's closet, year round, and filling a "white space" with its product; and (ii) use of Plaintiff R and A's marketing materials is misleading the public into believing that Defendant Spanx was the first to market with a revolutionary concept that solves a problem that has never been solved before.

97.    Defendant Spanx CEO Blakely, through her false statements identifying Defendant Spanx as the creator of a new product category and use of Plaintiff R and A's marketing and advertising is further intentionally confusing and deceiving the consuming public as to the source, affiliation, connection, or sponsorship of the Spanx ARM TIGHTS products.

98.    Defendant Spanx's use in commerce to advertise, market, and sell ARM TIGHTS throughout the United States, including California using false and misleading statements and basing its advertising on Plaintiff R and A's advertising constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

99.    Consumers are likely to be misled and deceived by Defendant Spanx's representations.

100.   Defendant Spanx knew or should have known that its statements and use of Plaintiff R and A's marketing and advertising materials were likely to mislead.

101.   As an actual and proximate result of Defendant Spanx willful and intentional actions, Plaintiff R and A has suffered damages in an amount to be determined at trial, and unless Defendant Spanx is enjoined, Plaintiff R and A will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

102.   Pursuant to 15 U.S.C. § 1117, Plaintiff R and A is entitled to damages for Defendant Spanx's Lanham Act violations, an accounting for profits made by Defendant Spanx on sales of ARM TIGHTS products, as well as recovery of the costs of this action. Furthermore, Plaintiff R and A is informed and believes, and on that basis alleges, that Defendant Spanx's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff R and A to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION
### (Unfair Competition and False Designation of Origin and under 15 U.S.C. §1125(a))

103.   Plaintiff R and A repeats and re-alleges each allegation set forth above as if set forth fully herein.

104.   Since at least May of 2013, Defendant Spanx knew of Plaintiff R and A's products and had ordered and received at least one of Plaintiff R and A's products and associated packaging and marketing materials.

105.   In September 2017, Defendant Spanx launched products in direct competition with Plaintiff R and A:  ARM TIGHTS and SHEER FASHION products.

106.   In connection with Defendant Spanx's sales and marketing of ARM TIGHTS and SHEER FASHION products, Defendant Spanx has used a false designation of origin, false or misleading description of fact or false or misleading representation of fact and have advertised and offered products nearly identical in appearance to Plaintiff R and A's products, using Plaintiff R and A's marketing and advertising materials, passing off Defendant Spanx's work as its own, and/or misleading the public into believe that Plaintiff R and A's products are those of Defendant Spanx.

107.   Defendant Spanx is selling products nearly identical in appearance to Plaintiff R and A's SLEEVEY WONDERS under sleeves products so as to confuse the consumers as to source.

108.   Defendant Spanx also advertises and offers services using marketing material similar in appearance to, and using similar phrases and illustrations as, Plaintiff R and A's marketing material, without limitation, Plaintiff R an A's paper doll illustrations, use of equations to show wardrobe expansion, bullet point list explaining what the product can do, product features, marketing buzz words, catch phrases, slogans, image reproductions and product depiction and product layout and presentation.

109.   Consumers are likely to be misled and deceived by Defendant Spanx's representations and use of confusingly similar products and marketing materials.

110.   Defendant Spanx knew or should have known that its statements, its products and use of Plaintiff R and A's marketing and advertising materials were likely to mislead and confuse the public.

111.   Further, Plaintiff R and A's SLEEVEY WONDERS under sleeves having been sold continuously and without interruption for over five years, across the United States and internationally, and have acquired secondary meaning such that consumers recognize SLEEVEY WONDERS under sleeves as coming from a unique source which is Plaintiff R and A.

112.   Both Defendant Spanx's ARM TIGHTS and SHEER FASHION products use the look and feel of Plaintiff R and A's SLEEVEY WONDERS under sleeves such that they are likely to cause confusion as to the source of SLEEVEY WONDERS under sleeves products with SPANX products or vice versa (creating reverse confusion).

113.   Defendant Spanx knew of the commercial success of Plaintiff R and A's SLEEVEY WONDERS under sleeves and Defendant Spanx willfully used the look and feel of Plaintiff R and A's under sleeves' trade dress in connection with the sale, offering for sale, distribution and/or advertising of ARM TIGHTS and SHEER FASHION products in a manner likely to cause confusion, or to cause mistake, or to deceive customers that Defendant Spanx's products derives from Plaintiff R and A's under sleeves products or otherwise associated with or authorized by Plaintiffs, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, thereby creating reverse confusion.

114.   Defendant Spanx's sale of product confusingly similar in appearance to Plaintiff R and A's under sleeves products and its advertising, marketing, and selling ARM TIGHTS and SHEER FASHION products throughout the United States, including California, using confusing similar product, false and misleading statements and advertising and marketing confusing similar to Plaintiff R and A's advertising and marketing, all in a manner likely to cause mistake, or to deceive customers that Defendant Spanx's products from Plaintiff R and A's under sleeves products or otherwise associated with or authorized by Plaintiff R and A, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, constitute unfair competition and false advertising in violation of 15 U.S.C. §1125(a). As a result, Plaintiff R and A has suffered and will continue to suffer damage to its business, reputation, and goodwill.

115.   As a direct and proximate result of Defendant Spanx's willful and intentional actions, Plaintiff R and A has suffered damages in an amount to be determined at trial and, unless Defendant Spanx is restrained, Plaintiff R and A will continue to suffer irreparable damage.

**FIFTH CAUSE OF ACTION**

**(Statutory Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 and 17500 *et seq.*)**

116.   Plaintiff R and A repeats and re-alleges each allegation set forth above as if set forth fully herein.

117.   Since at least May of 2013, Defendant Spanx knew of Plaintiff R and A's under sleeves products and had ordered and received at least of Plaintiff R and A's under sleeves products and associated packaging and marketing materials.

118.   In September 2017, Defendant Spanx launched products in direct competition with Plaintiff R and A:  ARM TIGHTS and SHEER FASHION products.

119.   In connection with Defendant Spanx's sales and marketing of ARM TIGHTS and SHEER FASHION products, Defendant Spanx has used a false designation of origin, false or misleading description of fact or false or misleading representation of fact and have advertised and offered products nearly identical in appearance to Plaintiff R and A's under sleeves products, using Plaintiff R and A's marketing and advertising materials, passing it off as its own.

120.   Defendant Spanx is selling products nearly identical in appearance to Plaintiff R and A'S SLEEVEY WONDER under sleeves product so as to confuse the consumers as to source.

121.   Defendant Spanx is using a false designation of origin, false or misleading description of facts and/or false or misleading representation of fact to

mislead the public into believe that Plaintiff R and A under sleeves products are those of Defendant Spanx.

122.   Defendant Spanx has advertised and offered services using market material similar in appearance to, and using similar phrases and illustrations as, Plaintiff R and A's marketing material.

123.   Consumers are likely to be misled and deceived by Defendant Spanx's representations, and Defendant Spanx knew or should have known that its statements and use of Plaintiff R and A's marketing and advertising materials were likely to mislead.

124.   Further, Plaintiff R and A's SLEEVEY WONDERS under sleeves having been sold continuously and without interruption for over five years, across the United States and internationally, and have acquired secondary meaning such that consumers recognize SLEEVEY WONDERS under sleeves as coming from a unique source which is Plaintiff R and A.

125.   Both Defendant Spanx's ARM TIGHTS and SHEER FASHION products use the look and feel of Plaintiff R and A's SLEEVEY WONDERS under sleeves such that they are likely to cause confusion as to the source of SLEEVEY WONDERS under sleeves products with Defendant Spanx's products or vice versa (creating reverse confusion).

126.   Defendant Spanx knew of the commercial success of Plaintiff R and A's SLEEVEY WONDERS under sleeves and Defendant Spanx willfully used the look and feel of Plaintiff R and A under sleeves' trade dress in connection with the sale, offering for sale, distribution and/or advertising of ARM TIGHTS and SHEER FASHION products in a manner likely to cause confusion, or to cause mistake, or to deceive customers that Defendant Spanx's products derives from Plaintiff R and A or otherwise associated with or authorized by Plaintiff R and A, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, thereby creating reverse confusion.

127.   Defendant Spanx sale of product confusingly similar in appearance to Plaintiff R and A's under sleeves products and its advertising, marketing, and selling ARM TIGHTS and SHEER FASHION products throughout the United States, including California, using confusing similar product, false and misleading statements and advertising and marketing confusing similar to Plaintiff R and A's advertising and marketing, all in a manner likely to cause mistake, or to deceive customers that Defendant Spanx's products derives from Plaintiff R and A or otherwise associated with or authorized by Plaintiff R and A, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx constitute unfair competition and false advertising in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*  As a result, Plaintiff R and A has suffered and will continue to suffer damage to its business, reputation, and goodwill.

128.   As a direct and proximate result of Defendant Spanx's willful and intentional actions, Plaintiff R and A has suffered damages in an amount to be determined at trial and, unless Defendant Spanx is restrained, Plaintiff R and A will continue to suffer irreparable damage.

## SIXTH CAUSE OF ACTION

**(Statutory Unfair or Deceptive Acts or Practices under California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, 1770 and 1780 *et seq.*))**

129.   Plaintiff R and A repeats and re-alleges each allegation set forth above as if set forth fully herein.

130.   Since at least May of 2013, Defendant Spanx knew of Plaintiff R and A's under sleeves products and had ordered and received at least of Plaintiff R and A's under sleeves products and associated packaging and marketing materials.

131.   In September 2017, Defendant Spanx launched products in direct competition with Plaintiff R and A:  ARM TIGHTS and SHEER FASHION products.

132.   In connection with Defendant Spanx's sales and marketing of ARM TIGHTS and SHEER FASHION products, Defendant Spanx has used a false designation of origin, false or misleading description of fact or false or misleading representation of fact and have advertised and offered products nearly identical in appearance to Plaintiff R and A's under sleeves products, using Plaintiff R and A's marketing and advertising materials, passing it off as its own.

133.  Defendant Spanx is selling products nearly identical in appearance to Plaintiff R and A's SLEEVEY WONDER under sleeves product so as to confuse the consumers as to source.

134.   Defendant Spanx is using a false designation of origin, false or misleading description of facts and/or false or misleading representation of fact to mislead the public into believe that Plaintiff R and A under sleeves products are those of Defendant Spanx.

135.   Defendant Spanx has advertised and offered services using market material similar in appearance to, and using similar phrases and illustrations as, Plaintiff R and A's marketing material.

136.   Consumers are likely to be misled and deceived by Defendant Spanx's representations, and Defendant Spanx knew or should have known that its statements and use of Plaintiff R and A's marketing and advertising materials were likely to mislead.

137.   Further, Plaintiff R and A's SLEEVEY WONDERS under sleeves having been sold continuously and without interruption for over five years, across the United States and internationally, and have acquired secondary meaning such that consumers recognize SLEEVEY WONDERS under sleeves as coming from a unique source which is Plaintiff R and A.

138.   Both Defendant Spanx's ARM TIGHTS and SHEER FASHION products use the look and feel of Plaintiff R and A's SLEEVEY WONDERS under sleeves such that they are likely to cause confusion as to the source of SLEEVEY WONDERS under sleeves products with Defendant Spanx's products or vice versa (creating reverse confusion).

139.   Defendant Spanx knew of the commercial success of Plaintiff R and A's SLEEVEY WONDERS under sleeves and Defendant Spanx willfully used the look and feel of Plaintiff R and A under sleeves' trade dress in connection with the sale, offering for sale, distribution and/or advertising of ARM TIGHTS and SHEER FASHION products in a manner likely to cause confusion, or to cause mistake, or to deceive customers that Defendant Spanx's products derives from Plaintiff R and A or otherwise associated with or authorized by Plaintiff R and A, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, thereby creating reverse confusion.

140.   Defendant Spanx sale of product confusingly similar in appearance to Plaintiff R and A's under sleeves products and its advertising, marketing, and selling ARM TIGHTS and SHEER FASHION products throughout the United States, including California, using confusing similar product, false and misleading statements and advertising and marketing confusingly similar to Plaintiff R and A's advertising and marketing, all in a manner likely to deceive consumers that Defendant Spanx's products derives from Plaintiff R and A or otherwise is associated, sponsored, affiliated, or connected with or certified by Plaintiff R and A, and/or deceive consumers as to the source of Spanx's products into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, constitute unfair or deceptive acts or practices under California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, 1770 and 1780 *et seq.*).  As a result, Plaintiff R and A has suffered and will continue to suffer damage to its business, reputation, and goodwill.

141.   As a direct and proximate result of Defendant Spanx's willful and intentional actions, Plaintiff R and A has suffered damages in an amount to be determined at trial and, unless Defendant Spanx is restrained, Plaintiff R and A will continue to suffer irreparable damage.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff R and A prays that this Court enter judgment against Defendant Spanx as follows:

A.     That Plaintiff R and A be granted injunctive relief under 17 U.S. Code § 502 *et seq.*; 15 U.S.C. § 1051 *et seq.*; California Business and Professions Code §§ 17200 and 17500 *et seq.*; California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, 1770 and 1780 et seq.) and federal law and California common law of trademark infringement; specifically, that Defendant Spanx and all of their respective officers, agents, servants, representatives employees, attorneys, and all other persons acting in concert with them be enjoined from:

1.     selling, offering for sale or advertising or marketing for sale ARM TIGHTS and SHEER FASHION products, or any other products confusingly similar in style and appearance to SLEEVEY WONDERS under sleeves;

2.     using all marketing and advertising materials that infringe Plaintiff R and A's copyright material and/or are confusing similar to Plaintiff R and A's marketing and advertising materials;

3.     directly or indirectly engaging in false or misleading advertising or promotions of ARM TIGHTS and SHEER FASHION products that create confusion as to source and/or mislead the public into believing that ARM TIGHTS provides a solution to women's fashion that never before existed.

B.     That Defendant Spanx file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying

the manner in which Defendant Spanx has complied with the terms of the injunction;

C.      That Defendant Spanx be ordered to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities or source of ARM TIGHTS and SHEER FASHION products, including without limitation, ceasing to advertise the product under the brand ARM TIGHTS as a solution to women's fashion that never before existed.

D.      That Defendant Spanx be adjudged to have violated 15 U.S.C. § 501 *et seq.* by having copied, reproduced, printed, displayed, offered for sale, and sold products that featured Plaintiff R and A's copyrighted work.

E.      That Defendant Spanx be adjudged to have violated 15 U.S.C. § 1125 et seq. by willfully using the look and feel of Plaintiff R and A under sleeves' trade dress in connection with the sale, offering for sale, distribution and/or advertising of ARM TIGHTS and SHEER FASHION products in a manner likely to cause confusion, or to cause mistake, or to deceive customers into believing that Defendant Spanx's products are Plaintiff R and A's products or otherwise associated with or authorized by Plaintiff R and A, and/or deceive customers into thinking that SLEEVEY WONDERS under sleeves are those of Defendant Spanx, thereby creating reverse confusion.

F.      That Defendant Spanx be adjudged to have violated 15 U.S.C. § 1125 by unfairly competing against Plaintiff R and A by using false, deceptive or misleading descriptions or representations of fact that misrepresent the nature, quality and characteristics of Defendant Spanx's products;

G. That Defendant Spanx be adjudged to unlawfully and unfairly compete against Plaintiff R and A under the laws of the State of California, Cal. Bus. & Prof. Code § 17200, et seq.;

H. That Defendant Spanx be adjudged to unlawfully and unfairly compete against Plaintiff R and A under the laws of the State of California, California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, 1770 and 1780 *et seq.*)

I. That Plaintiff R and A be awarded damages pursuant to 15 U.S.C. § 504 and 505 sufficient to compensate it for the damage caused by Defendant Spanx's infringement of Plaintiff R and A's copyrighted work;

J. That Plaintiff R and A be awarded damages pursuant to 15 U.S.C. § 1117(a) for unfair competition and false advertising and trade dress infringement, in an amount, sufficient to compensate it for the damage caused by Defendant Spanx;

K. That Plaintiff R and A be awarded Defendant Spanx's profits derived by reason of said acts, or as determined by said accounting;

L. That such damages and profits be trebled and awarded to Plaintiff R and A and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117 and § 504, as a result of Defendant Spanx's willful, intentional, and deliberate acts in violation of the Lanham Act and the Copyright Act;

M. That Plaintiff R and A be awarded damages in an amount sufficient to compensate it for the damage caused by Defendant Spanx's unfair competition and false advertising under California Business and Professions Code §§ 17200 and 17500 *et seq.* and trademark infringement under federal law and California common law;

N. That Plaintiff R and A be awarded damages in an amount sufficient to compensate it for the damage caused by Defendant Spanx's unfair or deceptive acts or practices under California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, 1770 and 1780 *et seq.*).

O. That Plaintiff R and A be granted prejudgment and post judgment interest;

P.      That Plaintiff R and A be granted costs associated with the prosecution of this action; and

Q.      That Plaintiff R and A be granted such further relief as the Court may deem just, including but not limited to punitive damages and attorneys' fees.


Dated:  December 20, 2017            **AVYNO LAW P.C.**


                                     By:  /s/ Jennifer H. Hamilton
                                          Jennifer H. Hamilton

                                          Attorneys for Plaintiff
                                          R and A Synergy, LLC

**DEMAND FOR JURY TRIAL**

Plaintiff R and A requests a jury trial on all issues properly triable to a jury.


Dated:  December 20, 2017                Avyno Law P.C.


                                         /s/ Jennifer H. Hamilton
                                         Jennifer H. Hamilton

                                         Attorneys for Plaintiff
                                         R and A Synergy, LLC